IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 10, 2023

**STATE OF TENNESSEE v. GLEN EDWARD MILLER**

**Appeal from the Circuit Court for Marshall County**
**No. 18-CR-28        Forest A. Durard, Jr., Judge**
_____

**No. M2023-00138-CCA-R3-CD**
_____

The Defendant, Glen Edward Miller, pleaded guilty to two counts of robbery and two counts of kidnapping, and the trial court sentenced him to a twelve-year effective sentence, to be served on probation after one year of confinement. In response to the Defendant's second proven probation violation, the trial court ordered him to serve the balance of his sentence in confinement. On appeal from this judgment, the Defendant contends that: (1) the trial court improperly admitted hearsay evidence; (2) the evidence is insufficient to prove that he violated his probation; and (3) the trial court erred when it ordered him to serve the balance of his sentence in confinement. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN W. CAMPBELL, SR., and KYLE A. HIXSON, JJ., joined.

Mitchell Aaron Raines, Assistant Public Defender, Appellate Division, Franklin, Tennessee (on appeal); and Michael J. Collins and William J. Harold, Assistant Public Defenders, Lewisburg, Tennessee (at hearing) for the appellant, Glen Edward Miller.

Jonathan Skrmetti, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Robert J. Carter, District Attorney General; and William Bottoms, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant using a weapon in August 2017 to put two victims in fear and to take their XBOX, XBOX 360, Play Station 4, various games, an Amazon firestick, and a cellphone. After being indicted for multiple offenses, the

Defendant pleaded guilty to two counts of robbery and two counts of kidnapping.[1] The trial court sentenced him to six years for each conviction, ordering that the robbery sentences run concurrently with each other and the kidnapping sentences run concurrently with each other, but the robbery sentences run consecutively to the kidnapping sentences. The total effective sentence was, therefore, twelve years, to be served at 30%. The trial court ordered the Defendant to probation after he served one-year day for day. The trial court entered the judgments of conviction on February 20, 2019. The Defendant's conditions of probation included that he not use illegal substances and that he not possess a weapon.

On April 3, 2019, the Defendant's probation officer filed an affidavit swearing that the Defendant had violated his probation. He stated that the Defendant had failed drug screens for marijuana and cocaine on March 14, 2019 and March 21, 2019. The trial court entered an agreed order on June 19, 2019, in which it revoked the Defendant's probation. The trial court ordered the Defendant to serve an additional six months in jail, consecutive to the sentence that the Defendant was serving at the time for a different conviction, and to attend a twelve-month drug rehabilitation program after being released from custody.

In August 2020, another probation violation was filed in which the Defendant's probation officer alleged that the Defendant had an active warrant for aggravated burglary and theft of property and had not verified his employment. After a hearing, the trial court dismissed the probation violation warrant and gave the Defendant jail credit for his incarceration between September 13, 2021, and December 15, 2021.

On November 22, 2022, the Defendant's probation officer filed an affidavit alleging that the Defendant had violated his probation by possessing a firearm on October 4, 2020, as evidenced by his charge by the Bureau of Alcohol Tobacco & Firearms. The trial court issued a warrant and held a hearing. At a hearing, the parties presented the following evidence.

Matt Thomas, the Defendant's probation officer, testified that he had supervised the Defendant since November 2022. He explained that, on February 20, 2019, the probation office instructed the Defendant to report on February 28, 2019. The Defendant informed them that he did not have to report because he had not yet served his one year of incarceration. The probation officer at the time, Mr. Thomas's colleague, informed the Defendant that he did, in fact, have to report. The Defendant did not report but did turn himself into jail to serve his one-year sentence. When he turned himself in to jail, he was drug screened and tested positive for cocaine and marijuana. He was, therefore, determined to have violated his probation and sentenced to six months of additional incarceration and also was instructed to attend a rehabilitation program. Mr. Thomas testified that his file did not show that the Defendant had attended the required program.

---

[1]A transcript of the guilty plea is not included in the record.

Mr. Thomas testified that he had never had contact with the Defendant for the duration of his supervision of him. The Defendant was under house arrest and being supervised by the federal pre-trial probation for his underlying charge. He said that the Defendant was under federal investigation stemming from him being the victim of a shooting on October 4, 2020 in Columbia, Tennessee. During the course of the investigation into the shooting, federal officers discovered the Defendant in possession of a firearm.

During cross-examination, Mr. Thomas said that the Defendant had been in jail or house arrest since Mr. Thomas began supervising him. He said that the federal case had not yet been resolved.

Neylan Barber, an officer with the Columbia Police Department testified that he knew the Defendant from the Defendant's previous encounters with law enforcement. He had knowledge of the October 4, 2020, shooting. He testified that he was called to a crime scene during the early morning hours of October 4, 2020, where he found over twenty shell casings in the roadway including those expended from a nine-millimeter and forty caliber weapon. There were over sixteen bullet impressions on the vehicle that was wrecked at the scene. There were cell phones and a gun visible in the vehicle. Both the Defendant and his passenger were taken to Maury Regional Hospital with gunshot wounds.

Officer Barber learned that the vehicle at the scene was registered to Sierra Harmon, who was the Defendant's girlfriend. Law enforcement seized the vehicle and obtained a search warrant for it. The search revealed fingerprints and blood on the gun in the vehicle, which was found where the Defendant was sitting in the vehicle. DNA testing showed that the Defendant's DNA was present on the gun. His fingerprint was additionally found on the weapon. A search of the phone in the car revealed that it belonged to the Defendant. On the phone's camera roll was a "selfie" of the Defendant and what appeared to be the weapon upon which his DNA was found. The photograph was time stamped four days before the shooting. Also, on the phone, the officer found messages related to the nine-millimeter gun, asking for a "stick" for it (which the officer said meant a magazine).

Officer Barber testified that the Defendant had multiple previous felony convictions, the first of which was from 2010.

Officer Barber interviewed the Defendant about the shooting. The Defendant said that the handgun belonged to the passenger in the vehicle, but he admitted that he had held the weapon at one point. Federal officials charged the Defendant with the federal offense of being a felon in possession of a handgun.

During cross-examination, Officer Barber testified that the Defendant originally told law enforcement that he was a passenger in the vehicle at the time of the shooting but later changed his statement, saying that he was the driver of the vehicle.

The trial court then admitted into evidence the federal indictment against the Defendant.

After the hearing, the trial court revoked the Defendant's probation. It ordered him to serve the balance of his sentence in incarceration, noting that he be given jail credit for his incarceration between September 13, 2021, and December 15, 2021, and between December 4, 2022, and January 11, 2023. In so doing, the trial court found:

> So, it appears from the testimony that there was an incident in Columbia, Tennessee where some warring factions got into a gun fight. The car that [the Defendant] was riding in got shot up. The car was wrecked. The car was determined to belong to [the Defendant's] girlfriend . . . at the time.
>
> And when officers peered into the wrecked vehicle they were able to see cell phones and firearms. So, they got a search warrant and they obtained that and sent that information of those items to TBI which came back with latent prints on the gun and also DNA leading to [the Defendant].
>
> [The Defendant] was interviewed and admitted his presence at the event. Now we have got what I have deemed a properly authenticated cell phone record here on the day before the incident, the date of the incident, being October 4 of 2022, the cell phone text message being October 3rd. And from this somebody asked, they said they have a 9mm and they want a stick, a magazine, and that was the day before the event occurred. Also, it was testified one day before the incident occurred extracted from that same phone it was a picture of obviously [the Defendant] standing in the kitchen wearing some black camo type pants and a red shirt [and] a red hat, at his feet is a semi-automatic pistol. [Officer ] Barber testified that it had the same characteristics of a Ruger that was found in the vehicle that was wrecked on October 4th. And they believe that to be the same weapon laying at the [Defendant's] feet and he should not be anywhere near that weapon being a convicted felon. And also laying at his feet looks like 2 bottles of alcohol, I'm not sure, and some type of square container. [A]nd that is the day before this incident happened.

The trial court went on to state that the proof inferred that the texts before the shooting indicated that there were two warring gangs or factions who were meeting to settle a dispute. It found that the State had "unquestionably met its burden" because the

4

Defendant was in possession of the weapon as evidenced by it being found in a car he was driving, the weapon having on it his DNA and fingerprint, his text messages the day before referring to this type of weapon, and the photograph on his phone showing him standing next to the weapon on the ground. Based upon this, the trial court found that the Defendant had violated the terms of his probation by being in possession of a weapon.

It then turned to decide his punishment. The State noted that this was the second time that the Defendant had been found in violation of the terms of his probation, with a third violation being dismissed. It further noted that the Defendant's probation officer had testified that the Defendant's reporting and contact had not been what it should be. The trial court agreed that the Defendant had violated his probation before. It further noted that the evidence indicated gang involvement and that the actions taken before the shooting were "preparatory steps taken in the knowledge that there was going to be a fight of some caliber." The trial court stated that, considering the seriousness of the infraction, it was appropriate to order the Defendant to serve the balance of his sentence in incarceration.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred when it admitted hearsay evidence, namely the latent fingerprint report and a DNA report, both from the weapon found in the vehicle the Defendant was driving; (2) the State presented insufficient evidence to prove that he violated his probation; and (3) the trial court abused its discretion when it ordered him to serve the balance of his sentence in confinement. The State agrees that the trial court failed to articulate the required "good cause" for admitting the hearsay evidence but contends the error was harmless. It further contends that the trial court did not err in any other regard.

Appellate courts review a trial court's revocation of probation decision for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequences on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). If a trial court fails to state its findings and reasoning for the revocation on the record, appellate courts may conduct a *de novo* review if the record is sufficiently developed, or the appellate court may remand the case for the trial court to make such findings. *Dagnan*, 641 S.W.3d at 759 (citing *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014)).

5

Probation revocation is a two-step consideration requiring trial courts to make two distinct determinations as to (1) whether to revoke probation and (2) what consequences will apply upon revocation. *Dagnan*, 641 S.W.3d at 757. No additional hearing is required for trial courts to determine the proper consequences for a revocation. *Id*. The trial court's findings do not need to be "particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id*. at 759 (citing *State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2021)).

"The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." T.C.A. § 40-35-311(d)(1). "If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." *Id*. Notwithstanding subdivision (d)(1), the probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both. *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App., Dec. 16, 2022).

The following are classified as non-technical violations: a defendant's commission of a new felony or a new Class A misdemeanor, a zero-tolerance violation as defined by the department of correction community supervision matrix, absconding, or contacting the defendant's victim in violation of a condition of probation. T.C.A. § 40-35-311(e)(2). Once a trial court determines that a defendant has committed a non-technical violation of probation, the trial court may: (1) order confinement for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for the remainder of the unexpired term to a sentence of probation. *See* T.C.A. §§ 40-35-308(c); -310; -311(e)(2).

The Defendant contends that the TBI's latent fingerprint report and DNA report were not reliable hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). In general, hearsay statements are inadmissible. Tenn. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or otherwise by law."). "Strict rules of evidence do not apply at revocation hearings." *State v. Lewis*, 917 S.W.2d 251, 257 (Tenn. Crim. App. 1995). "Reliable hearsay has been held admissible in a probation revocation hearing so long as the defendant had a fair opportunity to rebut the evidence." *Id.* (citing *State v. Carney*, 752 S.W.2d 513 (Tenn. Crim. App. 1988)). In order for hearsay evidence to be deemed admissible, a trial court must find that "good cause" exists to justify the denial of the right to confront witnesses and that the hearsay evidence is reliable. *State v. Wade*, 863 S.W.2d 406, 409 (Tenn. 1993).

At the hearing, the Defendant's probation officer, Mr. Thomas, testified first, and he started to mention that the Defendant had a firearm in his possession after an investigation into the October 4, 2020 shooting. The Defendant objected to hearsay, and the trial court sustained the objection saying that any hearsay admitted would have to be first deemed reliable. The only other witness, Officer Barber, then testified that he had sent swabs from the gun and the gun itself to the TBI Crime Laboratory, which found the Defendant's DNA and fingerprint on the weapon. The following occurred:

> MR. HAROLD: I am going to object to this.

> THE COURT: I am going to overrule that objection. The officer received presumably a report from the TBI about the results of the latent prints; is that correct?

> [OFFICER BARBER]: That is correct, sir.

> [THE COURT:] So that in the Court's mind, a lab report from the TBI would be reliable hearsay.

> MR. HAROLD: Is that report here?

> [OFFICER BARBER]: I do have a copy in my file.

> MR. HAROLD: If we could see it.

> THE COURT: You can see it during cross examination. That is the distinction from what we had with the last witness and what we have with this witness. The last witness was testifying to hearsay but it is not as reliable, as I believe a latent print report would be a reliable form of hearsay.

During the State's further direct examination of Officer Barber, he said that the Defendant was confronted with the TBI report at which time he stated that the gun belonged to the passenger in the vehicle but that he had in fact held it at one point, which would explain his fingerprints on the weapon.

In overruling the Defendant's objection to the reports, the trial court stated, "As far as latent fingerprints and DNA, I deem those are reliable hearsay in this particular case."

The trial court made a specific finding that the TBI report was a reliable form of hearsay. The trial court did not make a finding of "good cause" that would justify the absence of the TBI crime lab technician who authored the report at the probation revocation hearing. Rather, the trial court simply noted the lab report was "reliable hearsay," and denied the Defendant his right to confront and cross-examine this adverse witness. Some

of our decisions conclude that "[a]lthough the trial court did not make a specific finding of 'good cause' for the admission hearsay testimony, such a finding was implicit in the trial court's words and findings." *See, e.g., State v. Jackson* No. W2022-01288-CCA-R3-CD, 2023 WL 2609643, at *4 (Tenn. Crim. App. Mar. 7, 2023), *no perm. app. filed*; *State v. Cherry*, No. W2015-01084-CCA-R3-CD, 2016 WL 520304, at *1 (Tenn. Crim. App. Nov. 3, 2015), *perm. app. denied* (Tenn. Feb. 8, 2016). Others have held in these circumstances that the defendant's confrontation rights were violated when the trial court admitted the lab report into evidence. *See, e.g., State v. Gribbons*, M2005-01992-CCA-R3-CD, 2006 WL 1916811, at *5 (Tenn. Crim. App., June 14, 2006); *State v. Wiley*, No. E2004-01463-CCA-R3-CD, 2005 WL 1130222, at *3 (Tenn. Crim. App., May 13, 2005) (reversing a revocation of probation based on hearsay evidence deemed reliable where the trial court "made no findings concerning the unavailability of the witness, nor did the court make a specific finding of good cause for the admission of the evidence"). We need not reach that issue in this case because we determine that any error, if it does exist, is harmless given the weight of the other evidence admitted.

Admission of this hearsay testimony was harmless beyond a reasonable doubt. *See* Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). It is well-established that a conviction need not be reversed due to an error of constitutional dimensions as long as the State demonstrates "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 368 U.S. 18, 24 (1967); *see also State v. Vaughan*, 144 S.W.3d 391, 409 (Tenn. Crim. App. 2003).

In this case, we conclude that the trial court did not abuse its discretion when it determined that the State had proven by a preponderance of the evidence that the Defendant violated his probation by possessing a firearm, even without considering the TBI crime lab report. The Defendant's cell phone, which was legally searched, shows that he exchanged messages referencing his need for a magazine for a weapon days before this shooting. He is pictured in a self-taken photograph on his cell phone with a weapon that appears to match the one used in this shooting. At the scene of the shooting, the weapon was found near where he was sitting. When confronted with the TBI report, the Defendant admitted that he had held the weapon but said his passenger was the owner of the weapon. Constructive possession principles aside, the Defendant clearly possessed this weapon, and there is sufficient evidence to prove that by a preponderance of the evidence even without consideration of the TBI report. Therefore, we conclude the outcome would not have been different in this case had the hearsay evidence been precluded. *See State v. Watson*, No. M2003-01814-CCA-R3-CD, 2004 WL 1562553 (Tenn. Crim. App. July 13, 2004), *perm. app. denied* (Tenn. Dec. 6, 2004); *State v. Cline*, No. M2000-01674-CCA-R3-CD, 2001 WL 1379877 (Tenn. Crim. App. Oct. 30, 2001), *no perm. app. filed* (both holding the trial courts' failure to find "good cause" for denying the defendant's confrontation rights was error, but harmless error, in light of other evidence that supported revocation of probation).

In contending that the evidence presented was not sufficient to sustain his violation of probation, the Defendant notes that there was insufficient proof that the cell phone belonged to him. He further contends that the picture showing him with the gun is not sufficient to prove that he possessed the weapon. We find this well-drafted argument unpersuasive. Tennessee courts recognize that "'possession' may be either actual or constructive." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *see also State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). A person constructively possesses an item when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Constructive possession has also been described as the "ability to reduce an object to actual possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). We have previously found that a probation violation existed when the defendant had the ability to reduce a handgun to his actual possession. *See, e.g., State v. Fife*, No. M2013-02211-CCA-R3-CD, 2014 WL 2902276, at *5 (Tenn. Crim. App. June 26, 2014), *no perm. app. filed; State v. Griggs*, No. W2005-00198-CCA-R3-CD, 2006 WL 1005176, at *8 (Tenn. Crim. App. Apr. 17, 2006) (upholding a conviction for possession of a firearm under the principle of constructive possession, where a firearm was found in the defendant's house). In this case, even if the Defendant did not have actual possession, he clearly had constructive possession of this weapon on multiple occasions.

The record reflects that the Defendant violated the terms of his probation by possessing a weapon, which was a non-technical violation for which he faces a federal gun charge. Accordingly, it was within the trial court's authority to order the Defendant to serve his original sentence upon revoking the Defendant's probation sentence. *See* T.C.A. §§ 40-35-308(c); -310; -311(e)(2). The Defendant is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE